UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIMBERLY QUARIO,

    Plaintiff,

v.                                       Case No. 8:18-cv-600-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A. Procedural Background**

In September 2003, an ALJ issued a fully favorable decision to Plaintiff, finding Plaintiff disabled and entitled to Supplement Security Income ("SSI") benefits since October 1, 2001 (Tr. 78-90). Subsequently, the Social Security Administration ("SSA") conducted a continuing disability review of Plaintiff, finding that Plaintiff achieved medical improvement such that Plaintiff's disability ceased on March 1, 2014 (Tr. 137-45). Upon review, a hearing officer affirmed the decision regarding the cessation of Plaintiff's disability (Tr. 137-45).

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

Plaintiff then requested an administrative hearing (Tr. 152). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 38-75). Following the hearing, the ALJ issued an unfavorable decision finding that Plaintiff's disability ended on March 1, 2014 and that Plaintiff did not become disabled again since that date (Tr. 14-37). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

The ALJ identified Plaintiff's most recent favorable medical decision finding that Plaintiff was disabled as the decision from September 2003, known as the "comparison point decision" or the CPD (Tr. 17, 19, 78-90). At the time of the CPD, Plaintiff had the following medically determinable impairments: thoraco-lumbar strain/sprain secondary to a motor vehicle accident; a history of a seizure disorder; borderline intellectual functioning; and a learning disability (Tr. 19). The prior ALJ determined that those impairments resulted in the residual functional capacity ("RFC") to lift up to 50 pounds and to preclude performance of competitive, remunerative work requiring the ability to understand, carry out, and remember instructions, use judgment in making work-related decisions, respond appropriately to supervisors, coworkers, and work situations, and deal with changes in a routine work setting (Tr. 19). Through the date of the most recent ALJ decision, Plaintiff had not engaged in substantial gainful activity ("SGA") (Tr. 19).

According to the ALJ, the medical evidence established that, since March 1, 2014, Plaintiff had the following medically determinable impairments: a history of thoraco-lumbar strain/sprain secondary to a motor vehicle accident; lumbar facet arthropathy; a history of a seizure disorder; intellectual disability; a learning disorder; an affective disorder; and obesity

(Tr. 19). The ALJ found that, since March 1, 2014, Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff's medical improvement occurred on March 1, 2014 (Tr. 22). Namely, since March 1, 2014, the impairments present at the time of the CPD decreased in medical severity to the point where Plaintiff had the RFC to perform light work, with the following additional limitations: frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; never work around unprotected heights or moving mechanical parts; and understand, remember, and carry out detailed but not complex instructions (Tr. 23). The ALJ stated that Plaintiff's medical improvement related to the ability to work because it resulted in an increase in Plaintiff's RFC (Tr. 24).

Going further, the ALJ found that, since March 1, 2014, Plaintiff continued to have a severe impairment or combination of impairments, and, based on those impairments present since March 1, 2014, Plaintiff had the RFC to perform light work, except that Plaintiff could only frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; never work around unprotected heights or moving mechanical parts; and could understand, remember, and carry out detailed but not complex instructions (Tr. 24-25). Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work since March 1, 2014 (Tr. 29). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an electronics worker, a small products assembler, and an electronic products assembler (Tr. 29-30, 65-67). Accordingly, based on Plaintiff's age, education, work experience, RFC,

and the testimony of the VE, the ALJ found that Plaintiff's disability ended on March 1, 2014, and Plaintiff did not become disabled again since that date (Tr. 30).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.[2] The regulations also establish a sequential evaluation process to determine whether a claimant's disability continues or ends. 20 C.F.R. § 404.1594(f). Under this process, the SSA must determine, in sequence, the following:

> (1) Whether the claimant is engaging in SGA.[3] If the claimant is engaging in substantial gainful activity, the SSA will find disability to have ended;
>
> (2) If the claimant is not engaging in SGA, whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the

---

[2] The cited references to the regulations pertain to those in effect at the time the decision was rendered.

[3] Substantial gainful activity means work that (1) involves doing significant and productive physical or mental duties and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

claimant does have such impairment, the claimant's disability will be found to continue;

(3) If the claimant does not have such impairment or combination of impairments, whether there has been medical improvement, as shown by a decrease in medical severity.[4] If there has been medical improvement, the analysis proceeds to step four. If there has been no decrease in medical severity, no medical improvement has occurred, and the analysis proceeds to step five.

(4) If the claimant experienced medical improvement, whether such medical improvement is related to the claimant's ability to perform work, *i.e.*, whether or not there has been an increase in the RFC based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five, but, if medical improvement is related to the ability to work, the analysis proceeds to step six;

(5) If the SSA found at step three that no medical improvement occurred or if the SSA found at step four that medical improvement is not related to the claimant's ability to work, whether any of the exceptions in 20 C.F.R. § 404.1594(d) and (e) apply. If none apply, the disability will be found to continue. If one of the first group of exceptions to medical improvement applies, the analysis proceeds to step six. If an exception from the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in the process;

(6) If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, the SSA will determine whether all the claimant's current impairments in combination are severe. The determination will consider all the claimant's current impairments and the impact of the combination of those impairments on the claimant's ability to function. If the RFC in step four shows significant limitation of the claimant's ability to do basic work activities, the analysis proceeds to step seven. When the evidence shows that all of the claimant's current impairments in combination do not significantly limit his or her physical or mental abilities to do basic work activities, the impairments will not be considered severe in nature, and, if so, the claimant will no longer be considered to be disabled;

(7) If a severe impairment exists, whether the claimant can perform SGA. At this step, the SSA assesses the RFC based on all the claimant's current impairments and considers whether the claimant can still do work he or she

---

[4] Medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1).

performed in the past. If he or she can perform such work, disability will be found to have ended;

(8) If unable to perform past relevant work, whether the claimant can perform other work given the RFC and the claimant's age, education, and past work experience.[5] If the claimant can perform other work, the SSA will find that disability has ended. If the claimant cannot perform other work, the SSA will find that disability continues.

20 C.F.R. § 404.1594(f)(1)-(8).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates

---

[5] An exception exists where the evidence in the claimant's file about his or her past relevant work is insufficient for the SSA to make a finding at step seven about whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(9). If the SSA finds that the claimant can adjust to other work based solely on his or her age, education, and RFC, the SSA will find that the claimant is no longer disabled, and the SSA will not make a finding about whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(9). If the SSA finds that the claimant may be unable to adjust to other work or that 20 C.F.R. § 404.1562 may apply, the SSA will assess the claim under step seven and make a finding about whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(9).

reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues that the ALJ erred by (1) relying on a typographical error contained in a medical report and repeated and reiterated in other medical opinions; (2) failing to properly compare medical opinion evidence at the time of the CPD to the medical opinion evidence associated with the continuing disability review; and (3) using the incorrect CPD date. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A.     Typographical Error**

Plaintiff's first contention of error involves the ALJ's improper reliance upon a typographical error contained in the medical report of Dr. Fred Alberts (Tr. 742-44). Namely, Plaintiff argues that Dr. Alberts incorrectly concluded in March 2014 that Plaintiff achieved an overall IQ score of 99 (Tr. 743), which the ALJ referenced throughout the decision in finding that Plaintiff experienced medical improvement. The record reflects that, in January 2000, Dr. Alberts performed a consultative examination of Plaintiff, during which Dr. Alberts submitted Plaintiff to an IQ test (Tr. 489-92). At that time, Plaintiff attained a verbal IQ score of 71, a performance IQ score of 80, and a full-scale IQ score of 74 (Tr. 490). Subsequently, in March 2002, Plaintiff underwent a psychological evaluation with Dr. Steven Wu, during which Dr. Wu administered an IQ test to Plaintiff (Tr. 607-10). Dr. Wu concluded that Plaintiff attained a verbal IQ score of 71, a performance IQ score of 79, and a full-scale IQ score of 73 (Tr. 608). Later, in March 2014, Plaintiff underwent a second evaluation with Dr. Alberts (Tr. 742-44).

In his March 2014 report, Dr. Alberts did not indicate that he conducted updated IQ testing of Plaintiff but rather indicated that the "[r]ecords provided by DDS indicate that more recent evaluations (2002) indicate an overall IQ sore of 99" (Tr. 743). As Plaintiff contends, nothing in the record supports an IQ score of 99 or otherwise indicates testing with such results.

Indeed, the Commissioner concedes that the error occurred but argues that remand is unwarranted because Plaintiff suffered no prejudice as a result of such error and because the ALJ relied primarily on other evidence in the record in determining that Plaintiff achieved medical improvement. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (quotation and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.") (citation omitted); *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (indicating that, when the plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted). Contrary to the Commissioner's argument, however, the decision indicates that the ALJ's reliance on the erroneous IQ score prejudiced Plaintiff.

In the decision, the ALJ specifically references and relies upon the error at least five times in the analysis (Tr. 20-21, 23). The ALJ also indicated that the "opinion of Dr. Alberts is consistent with findings from his evaluation of the claimant and the overall evidence of record as it relates to the claimant's mental impairments during the relevant period" and that the RFC was "supported by the medical evidence of record and opinion evidence, including conservative treatment of the claimant's back pain, the claimant's reported activities, and the report of

consultative examiner Dr. Alberts" (Tr. 27, 28). The ALJ additionally relied upon and gave some weight to the opinions of state agency medical consultants, two of whom relied on the erroneous report of Dr. Alberts in assessing Plaintiff's mental functioning (Tr. 28, 757, 779). Given the repeated references to the erroneous IQ score and to the findings and opinion of Dr. Alberts, it appears that Plaintiff suffered clear prejudice as a result of the error in Dr. Alberts's report. Accordingly, upon remand, the ALJ shall reconsider the findings and opinion of Dr. Alberts, and the other medical opinions relying on the findings of Dr. Alberts, and specifically address Plaintiff's mental functioning in light of the erroneous IQ score and medical opinions relying on that score.

### B. Medical Opinion Evidence

Plaintiff next argues that the ALJ improperly compared medical opinion evidence at the time of the CPD to the medical evidence associated with the continuing disability review. As discussed above, "[a]n ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his [or her] ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012) (*per curiam*) (citations omitted); 42 U.S.C. § 423(f)(1); *see* 20 C.F.R. § 404.1594(a). As indicated, medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). The conclusion that a decrease in medical severity exists must be based upon improvements in a claimant's symptoms, signs, or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 404.1594(b)(1). Namely, this medical improvement must correspond to an increase in functional capacity that would allow the claimant to engage in substantial gainful activity.

20 C.F.R. § 404.1594(b)(3). To determine medical improvement, a comparison of prior and current medical evidence must indicate that improvements occurred in the symptoms, signs, or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 404.1594(c)(1). "[A] comparison of the original medical evidence and the new medical evidence is necessary to make a finding of medical improvement." *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (*per curiam*) (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)). Without such comparison, no adequate finding of medical improvement can occur. *Vaughn*, 727 F.2d at 1043. Indeed, the failure to make such comparison requires reversal and remand for application of the proper legal standard. *Id.*; *see Klaes*, 499 F. App'x at 896 (citing *Vaughn* and noting that, if the ALJ fails to evaluate the prior medical evidence and make the comparison to the new medical evidence, courts must reverse and remand for application of the proper legal standard).

Here, Plaintiff asserts that the ALJ did not properly compare the prior medical opinions of the state agency medical consultants in the prior claims file to the medical opinions of the state agency medical consultants contained in the current claims file. Plaintiff contends that, if the ALJ properly compared the prior opinions to the new opinions, the ALJ would have concluded that the opinions were substantially the same. Given the issue outlined above and the noted issues with the state agency medical opinions in the current claims file, the ALJ shall reconsider the opinions of the state agency medical consultants and shall properly compare the current findings to the findings from the prior medical opinions.

### C. CPD Date

Finally, Plaintiff argues that the ALJ used the incorrect CPD date in rendering the decision. Essentially, Plaintiff argues that the ALJ improperly used the September 2003 decision (Tr. 78-90) as the CPD rather than a subsequent February 2008 decision (Tr. 97, 100,

698).  As the Commissioner notes, the February 2008 decision occurred after Plaintiff filed an application for disability insurance benefits in December 2007 and included only a decision from a single decisionmaker, who determined that Plaintiff had earnings sufficient to entitle her to DIB (Tr. 97, 100, 698).  As the February 2008 decision indicates, it was simply a matter of collateral estoppel based on Plaintiff's receipt of SSI benefits rather than any analysis of Plaintiff's functional abilities (Tr. 698).  Furthermore, during the administrative hearing, Plaintiff's counsel repeatedly agreed that the September 2003 decision operated as the correct CPD (Tr. 53-54, 70-71).  Notwithstanding, to the extent that any basis exists for using the February 2008 decision as the CPD rather than the September 2003 decision as the CPD, the ALJ shall address such issue upon remand.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.  The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of August, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record